STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE

JENNIFER LAKE, as Personal
Representative of the Estate of
BENJAMIN PELCH, JR., Deceased,

    Plaintiff,

v.

HEARTLAND - BRIARWOOD MI, LLC
d/b/a HEARTLAND HEALTH CARE
CENTER - BRIARWOOD, and as
Successor Corporation to HEARTLAND
HEALTH CARE CENTER - BRIARWOOD,
and/or EAST MICHIGAN CARE CORPORATION
and/or MANOR CARE, INC.,

    Defendants.

Case No. 08-89404-NM
Hon.


A TRUE COPY
Michael J. Carr, Clerk

---

SCOTT L. FEUER (P38185)
FEUER & KOZERSKI, PC
Attorney for Plaintiff
251 Merrill St., Ste. 203
Birmingham, MI 48009
(248) 723-7828, Ext. 201

MICHAEL J. KELLY (P41358)
Co-Counsel for Plaintiff
717 S. Grand Traverse St.
Flint, MI 48502
(810) 235-4100

---

### FIRST AMENDED COMPLAINT AND AFFIDAVIT OF MERIT

There is no other civil action between these parties
arising out of the same transaction or occurrence as
alleged in this complaint pending in this Court, nor has any
such action been previously filed and dismissed or
transferred after having been assigned to a judge in this Court.

---

NOW COMES the Plaintiff, JENNIFER LAKE, personal representative of the Estate of BENJAMIN PELCH, JR., and hereby complains against defendants, HEARTLAND - BRIARWOOD MI, LLC d/b/a HEARTLAND HEALTH CARE CENTER - BRIARWOOD, and as Successor Corporation to HEARTLAND HEALTH CARE CENTER - BRIARWOOD, and/or EAST MICHIGAN CARE CORPORATION and/or MANOR CARE, INC., as follows:

OCT 10 2008

## JURISDICTION AND VENUE

1. That plaintiff Personal Representative Jennifer Lake is a resident of the city of Linden, County of Genesee, State of Michigan.

2. The defendants, HEARTLAND - BRIARWOOD MI, LLC d/b/a HEARTLAND HEALTH CARE CENTER - BRIARWOOD, and as Successor Corporation to HEARTLAND HEALTH CARE CENTER - BRIARWOOD, and/or EAST MICHIGAN CARE CORPORATION and/or MANOR CARE, INC are corporations doing business in the County of Genesee, State of Michigan.

3. This cause of action arises out of the care and treatment of the decedent, BENJAMIN PELCH, JR., at Heartland Health Care Center - Briarwood, which resulted in his death on May 21, 2006.

4. The amount in controversy in this case exceeds $25,000.00, exclusive of costs, interest and attorney fees.

## COUNT I

5. Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 4, above, as though fully set forth herein.

6. BENJAMIN PELCH, JR., was admitted to the Heartland Health Care Center - Briarwood (hereinafter referred to as "HHCC") on May 5, 2006, after a hospitalization for a CVA and/or TIA on May 1, 2006.

7. Mr. Pelch was at an extremely high risk for falls given his history of CVA and/or TIA, a total knee replacement, a total hip replacement as well as his Alzheimer's Disease.

8. On May 10, 2006, Mr. Pelch was left alone and unmonitored in a wheelchair in the dining room during lunch.

9. As a result of the negligence of the defendant and its employees, Mr. Pelch fell out of his wheelchair and struck his face and head. He was non-responsive for at least three minutes

2

before a nurse arrived.

10. Mr. Pelch was taken to McLaren Hospital where he was diagnosed with a right subdural hematoma as well as a nasal fracture.

11. After suffering for eleven (11) days, he died on May 21, 2006, as a result of the subdural hematoma.

12. Despite the fact that Mr. Pelch was at an obviously high risk for fall, the nurses and personnel at HHCC failed to assess Mr. Pelch's risk for fall. No assessment was done with respect to his fall risk from a chair. No minimum data set (MDS) was done prior to his fall. No plan to safeguard Mr. Pelch was prepared prior to his fatal fall.

13. At all times relevant hereto, the health care and nursing staff at HHCC were apparent, ostensible, implied and/or express agents of and/or were employed by defendant HHCC and were acting in the course and scope of their employment and/or agency, when the acts of malpractice and/or negligence hereinafter set forth and described were committed, thereby imposing vicarious liability upon defendants by reason of the doctrine of respondeat superior.

14. At all times relevant hereto, defendants agreed to provide Mr. Pelch with the necessary and proper medical care and held themselves out to the public, and in particular, to BENJAMIN PELCH, JR., as a skilled and competent nursing facility capable of properly and skillfully ensuring the safety of and treating individuals seeking their services, such as Mr. Pelch.

15. At all times relevant hereto, the defendants' health care and nursing personnel owed the plaintiff's decedent, BENJAMIN PELCH, JR., the duty to provide him with supervision, care and treatment in accordance with the standard of care applicable to nurses and health care workers. The applicable standard of care owed to the plaintiff's decedent, BENJAMIN PELCH, JR., included, but was not limited to the following:

    a. The standard of care required that a full safety assessment be done upon admission;

    b.    The standard of care required an assessment of the fall risk posed by Mr. Pelch at the time of admission;

    c.    The standard of care required that the nursing personnel conduct a safety assessment and prepare a minimum data set (MDS) upon admission;

    d.    The standard of care required that the nursing and medical personnel formulate a plan to care for and to delineate the measures that would be taken for Mr. Pelch's safety; and

    e.    HHCC is vicariously liable for the failure of any agent or employee to act in accordance with the above requirements to conform with the standard of care for the acts of its agents and employees.

16.    Notwithstanding these duties, the defendants breached the standard of care in the following particulars:

    a.    The nursing personnel and/or medical personnel breached the standard of care when they failed to properly perform a full safety assessment at the time of Mr. Pelch's admission;

    b.    The nursing personnel and/or medical personnel breached the standard of care by failing to perform an assessment of Mr. Pelch's risk for fall at the time of admission;

    c.    The nursing personnel and/or medical personnel breached the standard of care by failing to conduct a safety assessment and by failing to prepare a minimum data set (MDS) on Mr. Pelch on admission;

    d.    The nursing personnel and/or medical personnel breached the standard of care by failing to formulate a plan to care for and to delineate the measures that would be taken for Mr. Pelch's safety; and

    e.    HHCC breached the standard of care since HHCC is vicariously liable.

19.    In order to achieve compliance with the standard of care, the defendants should have performed the following:

    a.    The nursing personnel/medical personnel caring for Mr. Pelch should have performed a full safety assessment upon admission;

    b.    The nursing personnel/medical personnel should have assessed Mr. Pelch for his risk of falls upon admission;

    c.    The nursing personnel/medical personnel should have conducted a safety assessment and prepared a minimum data set (MDS) upon admission;

    d.    The nursing personnel/medical personnel should have formulated a plan in order

to assess the risk of falls and to care for and delineate the measures that would be taken to provide for Mr. Pelch's safety; and

e. HHCC should have ensured that its agents and employees conformed to the standard of care noted above and is vicariously liable for its agents' or employees' failure to act in accordance with the standard of care.

20. These breaches of the standard of care proximately caused Mr. Pelch's injury and ultimate death as follows:

a. Had a full safety assessment been performed on Mr. Pelch upon admission, a plan of care could have been implemented that would have ensured his safety and prevented his fall and his resultant damages and death;

b. Had the nursing personnel/medical personnel identified Mr. Pelch as a risk for falls, Mr. Pelch would have been monitored, in which case he would not have suffered the fall and his resultant damages and death;

c. Had the nursing personnel/medical personnel assessed Mr. Pelch for risk of falls and prepared a minimum data set (MDS), it would have been noted that Mr. Pelch should have been monitored, and, if he was monitored, he would not have fallen and he would not have suffered the damages and death noted;

d. Had the nursing personnel/medical personnel formulated a plan to assess the risks of falls and formulated a safety assessment for Mr. Pelch and to care for and delineate the measures that would be taken to provide for Mr. Pelch's safety, he would not have fallen and sustained damages and death; and

e. Had HHCC ensured that its agents and employees conformed to the standard of care noted above, Mr. Pelch would not have fallen and suffered the injuries and resultant death.

21. As a direct and proximate result of the aforementioned acts of negligence and/or malpractice, plaintiff's decedent, BENJAMIN PELCH, JR., died on May 21, 2006.

22. The decedent's estate is entitled to recover those damages available under the Michigan Wrongful Death statute, MCL 600.2922, which include, but are not limited to the following:

a. Reasonable compensation for the pain and suffering endured by BENJAMIN PELCH, JR., during the period of time between his fall on May 10, 2006, and his ultimate death on May 21, 2006;

b. Necessary and reasonable medical expenses;

c. Necessary and reasonable funeral and burial expenses; and

  d. The loss to the decedent's survivors of his love, companionship, counsel and society.

WHEREFORE, plaintiff, Jennifer Lake, as Personal Representative of the Estate of Benjamin Pelch, Jr., claims judgment against the defendants, HEARTLAND - BRIARWOOD MI, LLC d/b/a HEARTLAND HEALTH CARE CENTER - BRIARWOOD, and as Successor Corporation to HEARTLAND HEALTH CARE CENTER - BRIARWOOD, and/or EAST MICHIGAN CARE CORPORATION and/or MANOR CARE, INC, for whatever amount plaintiff is found to be entitled, as determined by the trier of fact, together with interest, costs and attorney fees.

FEUER & KOZERSKI, PC

SCOTT L. FEUER (P38185)
Attorney for Defendant
251 Merrill St., Ste. 203
Birmingham, MI 48009
(248) 723-7828

Date: August __, 2008

MICHAEL J. KELLY (P41358)
Co-Counsel for Plaintiff
717 S. Grand Traverse St.
Flint, MI 48502
(810) 235-4100

Date: August __, 2008

6

# EXHIBIT "A"

AFFIDAVIT OF MERIT

STATE OF MICHIGAN           )
                            ) SS
COUNTY OF WASHTENAW         )

I, Sharon VanRiper, M.S., R.N. C.C.R.N., being first duly sworn, hereby depose and state as follows under oath:

1. I am a licensed registered nurse and I am licensed to practice nursing in the state of Michigan.

2. I have reviewed the Notice of Intent sent in this matter pursuant to MCL 600.2912b, as well as Benjamin Pelch's medical records from Briarwood Nursing Center, McLaren Hospital and from Dr. Sahouri.

3. The standard of care applicable in this matter is that of a reasonably prudent registered nurse.

4. I have advised attorney Scott Feuer that I believe reasonable cause exists for the filing of a lawsuit concerning the care and treatment that Benjamin Pelch received from the Briarwood Nursing Center.

5. My review of the matter indicates that Benjamin Pelch was admitted to East Michigan Care Corporation, d/b/a Heartland Health Care Center - Briarwood (hereinafter referred to as "HHCC") on May 5, 2006, after a hospitalization for a CVA and/or TIA on May 1, 2006. He was at extremely high risk for falls given his history of CVA and/or TIA, a total knee replacement, a total hip replacement, as well as Alzheimer's Disease.

6. On May 10, 2006, Mr. Pelch was left alone and unmonitored in a wheelchair in the dining room during lunch. As a result, he fell out of the wheelchair, striking his face and head. He was non-responsive for at least three minutes before a nurse arrived.

7. Mr. Pelch was taken to McLaren Hospital where he was diagnosed with a right subdural hematoma as well as a nasal fracture. After suffering for eleven days, he died on May 21,

2006, as a result of the subdural hematoma.

8. Despite the fact that Mr. Pelch was at an obviously high risk for fall, the nurses and personnel at HHCC failed to assess Mr. Pelch's risk for fall. No assessment was done with respect to his fall risk from a chair. No minimum data set (MDS) was done prior to his fall. No plan for the safety of Mr. Pelch was prepared prior to his fatal fall.

9. The requirements of the applicable standard of care are as follows:

   a. The standard of care required that a full safety assessment be done upon admission.

   b. The standard of care required an assessment of the fall risk posed by Mr. Pelch at the time of admission.

   c. The standard of care required that the nursing personnel conduct a safety assessment and prepare a minimum data set (MDS) upon admission.

   d. The standard of care required that the nursing and medical personnel formulate a plan to care for and to delineate the measures that would be taken for Mr. Pelch's safety.

   e. HHCC is vicariously liable for the failure of any agent or employee to act in accordance with the above requirements to conform with the standard of care.

10. The standard of care was breached by HHCC and its employees and agents, in numerous ways, including the following:

   a. The nursing personnel and/or medical personnel breached the standard of care when they failed to properly perform a full safety assessment at the time of Mr. Pelch's admission.

   b. The nursing personnel and/or medical personnel breached the standard of care by failing to perform an assessment of Mr. Pelch's risk for fall at the time of admission.

   c. The nursing personnel and/or medical personnel breached the standard of care by failing to conduct a safety assessment and by failing to prepare a minimum data set (MDS) on Mr. Pelch on admission.

   d. The nursing personnel and/or medical personnel breached the standard of care by failing to formulate a plan to care for and to delineate the measures that would be taken for Mr. Pelch's safety.

2

   e. HHCC breached the standard of care since HHCC is vicariously liable for the failure of any agent or employee to act in accordance with the standard of care.

11. In order to comply with the applicable standard of care, HHCC and its agents and employees should have performed the following:

   a. The nursing personnel/medical personnel caring for Mr. Pelch should have performed a full safety assessment upon admission.

   b. The nursing personnel/medical personnel should have assessed Mr. Pelch for his risk of falls upon admission.

   c. The nursing personnel/medical personnel should have conducted a safety assessment and prepared a minimum data set (MDS) upon admission.

   d. The nursing personnel/medical personnel should have formulated a plan in order to assess the risk of falls and to care for and delineate the measures that would be taken to provide for Mr. Pelch's safety.

   e. HHCC should have ensured that its agents and employees conformed to the standard of care noted above and is vicariously liable for its agents or employees' failure to act in accordance with the standard of care.

12. The proximate result from these numerous breaches of the standard of care noted above were the following:

   a. Had a full safety assessment been performed on Mr. Pelch upon admission, a plan of care could have been implemented that would have ensured his safety and prevented his fall and his resultant damages and death.

   b. Had the nursing personnel/medical personnel identified Mr. Pelch as a risk for falls, Mr. Pelch would have been monitored, in which case he would not have suffered the fall and his resultant damages and death.

   c. Had the nursing personnel/medical personnel assessed Mr. Pelch for risk of falls and prepared a minimum data set (MDS), it would have been noted that Mr. Pelch should have been monitored, and, if he was monitored, he would not have fallen and he would not have suffered the damages and death noted.

   d. Had the nursing personnel/medical personnel formulated a plan to assess the risks of falls and formulated a safety assessment for Mr. Pelch and to care for and delineate the measures that would be taken to provide for Mr. Pelch's safety, he would not have fallen and sustained damages and death.

3

  e. Had HHCC ensured that its agents and employees conformed to the standard of care noted above, Mr. Pelch would not have fallen and suffered the injuries and resultant death.

13. This affidavit is prepared and filed in accordance with MCL 600.2912d.

*[signature]*
SHARON VANRIPER, M.S., R.N. C.C.R.N.

Subscribed and sworn to before me
this 7th day of January, 2008.

*[signature]*

Notary Public *Livingston*
~~Washtenaw~~ County
My Commission expires: 9-13-13

4



**FEUER & KOZERSKI, P.C.**
MERRILLWOOD BUILDING
251 Merrill Street
Suite 203
Birmingham, Michigan 48009

7007 2560 0003 0156 7038

Via Certified Mail -Return Receipt Requested
Joanna Gagan, Process Specialist
CT Corporation
30600 Telegraph Rd., Ste. 2345
Bingham Farms, MI 48025