UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER LAKE, as Personal Representative
of the Estate of BENJAMIN PELCH, JR.,
Deceased,

              Plaintiff,

-v-

HEARTLAND - BRIARWOOD MI, LLC. d/b/a
HEARTLAND HEALTH CARE CENTER -
BRIARWOOD, and as Successor Corporation to
HEARTLAND HEALTH CARE CENTER -
BRIARWOOD, and/or EAST MICHIGAN CARE
CORPORATION and/or MANOR CARE, INC.,

              Defendants.

Case No. 08-14669-CK

Hon.  Sean Cox

| | |
|---|---|
| SCOTT L. FEUER (P38185) | WILLIAM D. CHAKLOS (P33180) |
| FEUER & KOZERSKI, PC | DAVID C. WIEGEL (P57277) |
| Attorney for Plaintiff | Attorneys for Defendant Heartland Briarwood |
| 251 Merrill St., Ste. 203 | One Woodward Ave., Ste 2400 |
| Birmingham, MI 48009 | Detroit, MI 48226-5845 |
| (248) 723-7828, Ext. 201 | (313) 965-7925 |

## SECOND AMENDED COMPLAINT

There is no other civil action between these parties arising out of
the same transaction or occurrence as alleged in this complaint
pending in this Court, nor has any such action been previously
filed and dismissed or transferred after having been assigned to
a judge in this Court.

_____

NOW COMES the Plaintiff, JENNIFER LAKE, personal representative of the Estate of

BENJAMIN PELCH, JR., and hereby complains against defendants, HEARTLAND - BRIARWOOD

MI, LLC d/b/a HEARTLAND HEALTH CARE CENTER - BRIARWOOD, and as Successor

Corporation to HEARTLAND HEALTH CARE CENTER - BRIARWOOD, and/or EAST MICHIGAN

CARE CORPORATION and/or MANOR CARE, INC., as follows:

1

## JURISDICTION AND VENUE

1.      That plaintiff Personal Representative Jennifer Lake is a resident of the city of Linden, County of Genesee, State of Michigan.

2.      The defendants, HEARTLAND - BRIARWOOD MI, LLC d/b/a HEARTLAND HEALTH CARE CENTER - BRIARWOOD, and as Successor Corporation to HEARTLAND HEALTH CARE CENTER - BRIARWOOD, and/or EAST MICHIGAN CARE CORPORATION and/or MANOR CARE, INC are corporations doing business in the County of Genesee, State of Michigan.

3.      This cause of action arises out of the care and treatment of the decedent, BENJAMIN PELCH, JR., at Heartland Health Care Center - Briarwood, which resulted in his death on May 21, 2006.

4.      The amount in controversy in this case exceeds $25,000.00, exclusive of costs, interest and attorney fees.

## COUNT I

5.      Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 4, above, as though fully set forth herein.

6.      BENJAMIN PELCH, JR., was admitted to the Heartland Health Care Center - Briarwood (hereinafter referred to as "HHCC") on May 5, 2006, after a hospitalization for a CVA and/or TIA on May 1, 2006.

7.      Mr. Pelch was at an extremely high risk for falls given his history of CVA and/or TIA, a total knee replacement, a total hip replacement as well as his Alzheimer's Disease.

8.      On May 10, 2006, Mr. Pelch was left alone and unmonitored in a wheelchair in the dining room during lunch.

9.      As a result of the negligence of the defendant and its employees, Mr. Pelch fell out of his wheelchair and struck his face and head.  He was non-responsive for at least three minutes before a nurse arrived.

10. Mr. Pelch was taken to McLaren Hospital where he was diagnosed with a right subdural hematoma as well as a nasal fracture.

11. After suffering for eleven (11) days, he died on May 21, 2006, as a result of pneumonia and congestive heart failure while in defendant's care.

12. Despite the fact that Mr. Pelch was at an obviously high risk for fall, the nurses and personnel at HHCC failed to assess Mr. Pelch's risk for fall. No assessment was done with respect to his fall risk from a chair. No adequate minimum data set (MDS) was prepared or disseminated prior to or after his fall. No plan to safeguard Mr. Pelch was prepared prior to his fatal fall or to promote his recovery after the fall.

13. At all times relevant hereto, the health care and nursing staff at HHCC were apparent, ostensible, implied and/or express agents of and/or were employed by defendant HHCC and were acting in the course and scope of their employment and/or agency, when the acts of malpractice and/or negligence hereinafter set forth and described were committed, thereby imposing vicarious liability upon defendants by reason of the doctrine of respondeat superior.

14. At all times relevant hereto, defendants agreed to provide Mr. Pelch with the necessary and proper medical care and held themselves out to the public, and in particular, to BENJAMIN PELCH, JR., as a skilled and competent nursing facility capable of properly and skillfully ensuring the safety of and treating individuals seeking their services, such as Mr. Pelch.

15. At all times relevant hereto, the defendants' health care and nursing personnel owed the plaintiff's decedent, BENJAMIN PELCH, JR., the duty to provide him with supervision, care and treatment in accordance with the standard of care applicable to nurses and health care workers. The applicable standard of care owed to the plaintiff's decedent, BENJAMIN PELCH, JR., included, but was not limited to the following:

   a. The standard of care required that a full safety assessment be done upon admission on May 5, 2006;

3

b.     The standard of care required an assessment of the fall risk posed by Mr. Pelch at the time of admission on May 5, 2006;

c.     The standard of care required that the nursing personnel conduct a safety assessment and prepare and disseminate an adequate minimum data set (MDS) upon admission on May 5, 2006;

d.     The standard of care required nursing personnel and/or medical personnel to formulate a plan to care for and to delineate the measures that would be taken for Mr. Pelch's safety upon his admission on May 5, 2006;

e.     The standard of care required that a full safety assessment be done upon Mr. Pelch's readmission on May 12, 2006 after his fall;

f.     The standard of care required an assessment of complications and risks to Mr. Pelch at the time of readmission on May 12, 2006.

g.     The standard of care required that the nursing personnel conduct an assessment for risks and complications to Mr. Pelch during recovery from his fall upon readmission on May 12, 2006.

h.     The standard of care required that the nursing and medical personnel formulate a plan to care for and to delineate the measures that would be taken for Mr. Pelch's safety, care and recovery upon readmission on May 12, 2006; and

i.     The standard of care required that the nursing and medical personnel implement and administer a plan of care to document and monitor potential for risks and complications to Mr. Pelch during his recovery from his fall upon readmission on May 12, 2006.

j.     HHCC is vicariously liable for the failure of any agent or employee to act in accordance with the above requirements to conform with the standard of care for the acts of its agents and employees.

16.     Notwithstanding these duties, the defendants breached the standard of care in the following particulars:

a.     The nursing personnel and/or medical personnel breached the standard of care when they failed to properly perform a full safety assessment at the time of Mr. Pelch's admission on May 5, 2006;

b.     The nursing personnel and/or medical personnel breached the standard of care by failing to perform an assessment of Mr. Pelch's risk for fall at the time of admission on May 5, 2006;

4

c.      The nursing personnel and/or medical personnel breached the standard of care by failing to conduct a safety assessment and by failing to prepare and disseminate an adequate minimum data set (MDS) on Mr. Pelch on admission on May 5, 2006;

d.      The nursing personnel and/or medical personnel breached the standard of care by failing to formulate a plan to care for and to delineate the measures that would be taken for Mr. Pelch's safety upon his admission on May 5, 2006;

e.      The nursing personnel and/or medical personnel breached the standard of care when they failed to properly perform a full safety assessment at the time of Mr. Pelch's readmission on May 12, 2006, after his fall;

f.      The nursing personnel and/or medical personnel breached the standard of care by failing to perform an assessment of complications and risks to Mr. Pelch at the time of readmission on May 12, 2006;

g.      The nursing personnel and/or medical personnel breached the standard of care by failing to conduct an assessment for risks and complications to Mr. Pelch during recovery from his fall upon readmission on May 12, 2006;

h.      The nursing personnel and/or medical personnel breached the standard of care by failing to formulate a plan to care for and delineate the measures that would be taken for Mr. Pelch's safety upon readmission on May 12, 2006;

i.      The nursing personnel and/or medical personnel breached the standard of care by failure to implement and administer a plan of care to document and monitor potential for risks and complications to Mr. Pelch during his recovery from his fall upon readmission on May 12, 2006.

j.      HHCC breached the standard of care since HHCC is vicariously liable.

17.     In order to achieve compliance with the standard of care, the defendants should have performed the following:

a.      The nursing personnel/medical personnel caring for Mr. Pelch should have performed a full safety assessment upon admission on May 5, 2006;

b.      The nursing personnel/medical personnel should have assessed Mr. Pelch for his risk of falls upon admission on May 5, 2006;

c.      The nursing personnel/medical personnel should have conducted a safety assessment and prepared and disseminated an adequate minimum data set (MDS) upon admission on May 5, 2006;

5

<div style="margin-left: 2em;">

d.    The nursing personnel/medical personnel should have formulated a plan in order to assess the risk of falls and to care for and delineate the measures that would be taken to provide for Mr. Pelch's safety upon his admission on May 5, 2006;

e.    The nursing personnel/medical personnel caring for Mr. Pelch should have performed a full safety assessment upon Mr. Pelch's readmission on May 12, 2006;

f.    The nursing personnel/medical personnel should have assessed Mr. Pelch for risks and complications to Mr. Pelch upon Mr. Pelch's readmission on May 12, 2006;

g.    The nursing personnel/medical personnel should have assessed Mr. Pelch for risks and complications to Mr. Pelch during his recovery from his fall upon readmission on May 12, 2006;

h.    The nursing personnel/medical personnel should have formulated a plan to care for and to delineate the measures that would be taken for Mr. Pelch's safety, care and recovery upon readmission on May 12, 2006;

i.    The nursing personnel/medical personnel should have implemented and administered a plan of care to document and monitor potential for risks and complications to Mr. Pelch during his recovery from his fall upon readmission on May 12, 2006;

j.    HHCC should have ensured that its agents and employees conformed to the standard of care noted above and is vicariously liable for its agents' or employees' failure to act in accordance with the standard of care.

</div>

18.    These breaches of the standard of care proximately caused Mr. Pelch's injury and ultimate death as follows:

<div style="margin-left: 2em;">

a.    Had a full safety assessment been performed on Mr. Pelch upon admission on May 5, 2006, a plan of care could have been implemented that would have ensured his safety and prevented his fall, and his resultant damages and death;

b.    Had the nursing personnel/medical personnel identified Mr. Pelch as a risk for falls on May 5, 2006, Mr. Pelch would have been monitored, in which case he would not have suffered the fall and his resultant damages and death;

c.    Had the nursing personnel/medical personnel assessed Mr. Pelch for risk of falls and prepared and disseminated an adequate minimum data set (MDS) on May 5, 2006, it would have been noted that Mr. Pelch should have been monitored, and, if he was monitored, he would not have fallen and he would not have suffered the damages and death noted;

</div>

d.    Had the nursing personnel/medical personnel formulated a plan to assess the risks of falls and formulated a safety assessment for Mr. Pelch and to care for and delineate the measures that would be taken to provide for Mr. Pelch's safety, he would not have fallen and sustained damages and death;

e.    Had a full safety assessment been performed on Mr. Pelch upon readmission on May 12, 2006 after his fall, a plan of care could have been implemented that would have ensured his safety, care and recovery and prevented his resultant damages and death;

f.    Had the nursing personnel/medical personnel performed an assessment of complications and risks to Mr. Pelch at the time of readmission on May 12, 2006, he would have been monitored, supervised and cared for in which case he would not have suffered his resultant damages and death;

g.    Had the nursing personnel/medical personnel assessed Mr. Pelch for risks and complications to Mr. Pelch during recovery from his fall on May 12, 2006, it would have been noted that Mr. Pelch should have been monitored, and, if he was monitored, he would not have suffered the damages and death noted;

h.    Had the nursing personnel/medical personnel formulated a plan to care for and to delineate the measures that would be taken for Mr. Pelch's safety, care and recovery upon readmission on May 12, 2006, he would not have sustained damages and death;

i.    had the nursing personnel/medical personnel implemented and administered a plan of care to document and monitor potential for risks and complications to Mr. Pelch during his recovery from his fall upon readmission on May 12, 2006, he would not have suffered the damages and death as noted;

j.    Had HHCC ensured that its agents and employees conformed to the standard of care noted above, Mr. Pelch would not have fallen and suffered the injuries and resultant death.

19.   As a direct and proximate result of the aforementioned acts of negligence and/or malpractice, plaintiff's decedent, BENJAMIN PELCH, JR., died on May 21, 2006.

20.   The decedent's estate is entitled to recover those damages available under the Michigan Wrongful Death statute, MCL 600.2922, which include, but are not limited to the following:

a.    Reasonable compensation for the pain and suffering endured by BENJAMIN PELCH, JR., during the period of time between his fall on May 10, 2006, and his ultimate death on May 21, 2006;

7

b.    Necessary and reasonable medical expenses;

c.    Necessary and reasonable funeral and burial expenses; and

d.    The loss to the decedent's survivors of his love, companionship, counsel and society.

WHEREFORE, plaintiff, Jennifer Lake, as Personal Representative of the Estate of Benjamin Pelch, Jr., claims judgment against the defendants, HEARTLAND - BRIARWOOD MI, LLC d/b/a HEARTLAND HEALTH CARE CENTER - BRIARWOOD, and as Successor Corporation to HEARTLAND HEALTH CARE CENTER - BRIARWOOD, and/or EAST MICHIGAN CARE CORPORATION and/or MANOR CARE, INC, for whatever amount plaintiff is found to be entitled, as determined by the trier of fact, together with interest, costs and attorney fees.

FEUER & KOZERSKI, PC

SCOTT L. FEUER (P38185)
Attorney for Defendant
251 Merrill St., Ste. 203
Birmingham, MI 48009
(248) 723-7828

Date:  November 10, 2009

8